FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 12, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>v.<br><br>HOMAR CRUZ-AGUILAR,<br><br>                Defendant. | NO. 1:19-CR-02010-SAB<br><br>**ORDER DISMISSING INDICTMENT** |

The Court held a hearing in the above-captioned matter on July 8, 2019. Jeffrey Dahlberg and Jennifer Barnes appeared on behalf of Defendant, who was present in the courtroom, and Richard Burson appeared on behalf of the Government. At the hearing, the parties addressed Defendant's pending Motion to Dismiss Indictment. ECF No. 43. The Court took the matter under advisement.

After careful consideration of the parties' briefing and oral presentation, the Court grants Defendant's motion and dismisses the indictment in this case.

## BACKGROUND

Defendant is charged with unlawful reentry in violation of 8 U.S.C. § 1326. The federal charge stems from a removal proceeding initiated against Defendant in late 2010. On October 22, 2010, the United States Department of Homeland Security (DHS) served Defendant with a document titled "Notice to Appear" (NTA). The NTA alleged Defendant was a citizen of Mexico who did not have permission to be in the United States. The document ordered Defendant to appear

**ORDER DISMISSING INDICTMENT ^ 1**

before an immigration judge on "a date to be set" and at "a time to be set," to show why Defendant should not be removed from the United States.

On October 29, 2010, the immigration court mailed a document titled "Notice of Hearing in Removal Proceedings" (Notice of Hearing) to Defendant's custodial officer. The Notice of Hearing was sent to inform Defendant of the date and time of his removal hearing. The document contains only one signature – that of the court staff member who mailed the document.

On November 3, 2010 – five days after the Notice of Hearing was placed in the mail – Defendant appeared for his removal proceeding. At the hearing, the immigration judge denied Defendant's request for voluntary departure and ordered Defendant be removed to Mexico. Defendant waived his right to appeal the immigration judge's decision and was subsequently deported. Defendant's 2010 removal order was reinstated in 2011 and 2013.

On March 6, 2019, Defendant was indicted for unlawful reentry. ECF No. 1. The federal charge is predicated on the removal order issued on November 3, 2010 (the "2010 removal order").

## DISCUSSION

Defendant seeks dismissal of the indictment in this case for two independent reasons. First, Defendant argues he cannot be prosecuted for unlawful reentry because the Government cannot prove the existence of a valid prior deportation order. More specifically, Defendant argues the 2010 removal order is void because no valid charging document was ever filed with the immigration court. Thus, the immigration court lacked subject matter jurisdiction over Defendant's removal proceeding. Absent a valid prior removal order, the Government cannot prove an essential element of 8 U.S.C. § 1326.

Second, Defendant attempts to collaterally attack the 2010 removal order, arguing that the immigration judge violated his due process rights by denying him

a meaningful opportunity to seek voluntary departure. Defendant argues this rendered his removal proceedings fundamentally unfair.

### (1) The 2010 Removal Order is Void for Lack of Subject Matter Jurisdiction.

Defendant first argues the 2010 removal order is void for lack of subject matter jurisdiction. "Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service." 8 C.F.R. § 1003.14(a). A "charging document" means "the written instrument which initiates a proceeding before an Immigration Judge … For proceedings initiated after April 1, 1997, these documents include a *Notice to Appear*, a Notice of Referral to Immigration Judge, and a Notice of Intention to Rescind and Request for Hearing by Alien." 8 C.F.R. § 1003.13 (emphasis added). Once a NTA is filed with the Immigration Court, "jurisdiction over the individual's immigration case vests with the IJ[.]" *Gonzalez-Caraveo v. Sessions*, 882 F.3d 885, 890 (9th Cir. 2018).

The Ninth Circuit Court of Appeals recently held that the regulatory definition of a NTA governs the immigration court's jurisdiction over an individual in removal proceedings. *Karingithi v. Whitaker*, 913 F.3d 1158, 1160 (9th Cir. 2019). Unlike the statutory[1] definition of a NTA, the regulatory definition does not require a NTA to provide the date and time of an individual's removal proceeding. 8 C.F.R. § 1003.15(b); *Karingithi*, 913 F.3d at 1160. Instead, the regulations provide that DHS "shall provide in the Notice to Appear, the time, place and date of the initial removal hearing, where practicable." 8 C.F.R. § 1003.18(b).

In *Karingithi*, for example, the Ninth Circuit determined the immigration court had jurisdiction over the defendant's removal proceedings when the initial NTA failed to specify the date and time of the removal proceedings, but later

---

[1] 8 U.S.C. § 1229(a).

**ORDER DISMISSING INDICTMENT ^ 3**

notices of hearing included that information. 913 F.3d at 1158. The Court concluded the decision was supported by the Board of Immigration Appeals' (BIA) decision in *Matter of Bermudez-Cota*, where the BIA held "a notice to appear that does not specify the time and place of an alien's initial removal hearing vests an Immigration Judge with jurisdiction over the removal proceedings … *so long as a notice of hearing specifying this information is later sent to the alien.*" 27 I. & N. Dec. 441, 447 (BIA 2018) (emphasis added). Because the defendant in *Karingithi* received subsequent hearing notices that specified the time and date of her removal proceedings, the Ninth Circuit determined jurisdiction was properly conferred upon the immigration judge. *Karingithi*, 913 F.3d at 1162.

The Ninth Circuit was careful to limit the scope of its decision in a major way, stating "we do not decide whether jurisdiction would have vested if [the defendant] had not received this information in a timely fashion." *Id*. The present case requires this Court to address the question left open in *Karingithi*: Does an immigration judge have jurisdiction over an individual's removal proceedings when the NTA filed with the immigration court failed to specify the time and date of the removal proceeding, and the individual was not provided with that information "in a timely fashion."?

The Court finds subject matter jurisdiction over a noncitizen's removal proceeding does not vest if the noncitizen does not receive the date and time of his removal proceeding "in a timely fashion." *Karingithi*, 913 F.3d at 1162; *U.S. v. DelCarmen-Abarca*, No. 4:19-cr-6005-SAB, 2019 WL 2712274, at *2-3 (E.D. Wash. June 7, 2019); *U.S. v. Morales-Santiago*, 376 F.Supp.3d 1105, 1114-15 (E.D. Wash. March 22, 2019); *U.S. v. Hernandez-Fuentes*, No. 1:18-cr-2074-SAB, 2019 WL 1487251, at *4 (E.D. Wash. March 20, 2019).

In this case, the evidence shows Defendant did not receive the date and time of his removal proceeding "in a timely fashion." *Karingithi*, 913 F.3d at 1162.

**ORDER DISMISSING INDICTMENT ^ 4**

Defendant was initially served with a NTA that did not contain the date and time of his removal hearing on October 22, 2010. The immigration court mailed a Notice of Hearing to Defendant's custodial officer on October 29, 2019 – five days prior to his removal proceeding. This notice was not received[2] by Defendant, nor was it timely. *See DelCarmen-Abarca*, 2019 WL 3712274, at *3 (finding the defendant did not receive the date and time of his removal proceeding "in a timely fashion," when the defendant was served with a Notice of Hearing five days prior to the removal hearing).

The Court also finds Defendant did not waive his right to receive notice of the removal proceeding ten days prior to the hearing. When Defendant was served with the NTA, he signed the clause requesting a prompt hearing. The clause states "[t]o expedite a determination in my case, I request an immediate hearing. I waive my right to a 10-day period prior to appearing before the immigration judge." ECF No. 43-1 at 2. Defendant argues this waiver is unenforceable because he was not advised, in Spanish, of the rights he was waiving when he signed the request for a prompt hearing.

This Court has held that such a waiver is unenforceable if it was not translated to the noncitizen. *See Hernandez-Fuentes*, 2019 WL 1287251, at *4

---

[2] The Court finds Defendant never actually received the Notice of Hearing prior to his removal proceeding. This fact is not disputed by the Government. Defendant submitted a sworn affidavit stating he does not recall ever receiving the Notice of Hearing while he was incarcerated at the Northwest Detention Center in Tacoma, Washington. ECF No. 49 at ¶ 2. Additionally, the Notice of Hearing is not signed by Defendant or the custodial officer who purportedly received the notice on Defendant's behalf. Neither Defendant nor the Government requested a hearing with witnesses or testimony, and so the Court has no choice but to find the necessary facts based on the affidavits submitted.

**ORDER DISMISSING INDICTMENT ^ 5**

(citing U*nited States v. Raya-Vaca*, 771 F.3d 1195, 1198 (9th Cir. 2014)). The evidence in this case does not support finding Defendant was advised of the rights he was waiving in Spanish. While the certificate of service on the NTA states Defendant "was provided oral notice in the Spanish language of the time and place of his or her hearing and of the consequences of failure to appear," it does not state Defendant was advised of the rights he was waiving by signing the request for a prompt hearing. ECF No. 43-1 at 2.

Additionally, the Court declines to infer the immigration officer advised Defendant of the rights he was waiving in Spanish, given the officer's false statement on the NTA. *Hernandez-Fuentes*, 2019 WL 1287251, at *4. The certificate of service states the immigration officer advised Defendant, in Spanish, of the time of his removal hearing. ECF No. 43-1 at 2. This is a false statement because at the time Defendant was served with the NTA, the date and time of his removal proceeding was not set. Thus, the Court finds it unlikely that the immigration officer advised Defendant, in Spanish, that by signing the request for a prompt hearing, he would be waiving his right to 10-days' notice. For these reasons, the Court finds the waiver invalid and unenforceable against Defendant.

In sum, Defendant's 2010 removal order is void for lack of subject matter jurisdiction because the initial NTA served upon Defendant did not contain the date and time of his removal proceeding, and the Government failed to show Defendant received this information "in a timely fashion." *Karingithi*, 913 F.3d at 1162. Because the 2010 removal order is void, the Government cannot prove an essential element to the charge of unlawful reentry. *U.S. v. Ubaldo-Figueroa*, 364 F.3d 1042, 1047 (9th Cir. 2004). Accordingly, the indictment must be dismissed.

**(2) Due Process Challenge.**

Defendant also challenges the validity of the 2010 removal order based on an alleged violation of his due process rights. Defendant argues the immigration

**ORDER DISMISSING INDICTMENT ^ 6**

judge violated his due process rights during his removal proceeding by denying him a genuine opportunity to seek voluntary departure.

### (a) Legal Standard for Collateral Attack of a Removal Order.

A defendant charged with illegal reentry under 8 U.S.C. § 1326 has a Fifth Amendment right to collaterally attack his removal order, because the removal order serves as a predicate element of his conviction. *Ubaldo-Figueroa*, 364 F.3d at 1047-48. To sustain a collateral attack, a defendant must, within constitutional limitations, demonstrate (1) that he exhausted all administrative remedies available to him to appeal his removal order; (2) that the underlying removal proceedings at which the order was issued improperly deprived him of the opportunity for judicial review, and (3) that the entry of the order was fundamentally unfair. *Id*. (citing 8 U.S.C. § 1326(d)).

### (b) The Immigration Judge Violated Defendant's Due Process Rights.

The Due Process Clause requires an immigration judge to advise a noncitizen of his eligibility for relief from deportation and " 'give him an opportunity to develop the issue.' " *U.S. v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000) (quoting *Moran-Enriquez v. INS*, 884 F.2d 420, 422-23 (9th Cir. 1989)). One such form of relief is voluntary departure. *See* 8 U.S.C. § 1229c. Voluntary departure is a discretionary form of relief that permits a noncitizen to depart the United States at his own expense and avoid receiving a removal order. 8 U.S.C. § 1229c(1)(a).

An immigration judge must "meaningfully advise[]" the noncitizen of his right to seek voluntary departure. *U.S. v. Melendez-Castro*, 671 F.3d 950, 954 (9th Cir. 2012). This means the noncitizen must be given a "genuine opportunity to apply for voluntary departure or to present evidence of the facts favoring this relief." *Id*. (citing *Campos-Granillo v. INS*, 12 F.3d 849, 852 n. 8 (9th Cir. 1993).

**ORDER DISMISSING INDICTMENT ^ 7**

While an immigration judge maintains discretion to grant voluntary departure, such discretion does not " 'strip the inquiry of all guideposts.' " *Campos-Granillo*, 12 F.3d at 852 (quoting *Mabugat v. INS*, 937 F.2d 426, 432 (9th Cir. 1991)). The immigration judge is required "to weigh favorable and unfavorable factors by evaluat[ing] all of them, assigning weight or importance to each one separately and then to all of them cumulatively." *Id*. (internal citation and quotation omitted). Mere conclusory statements are insufficient. *Id*.

When a noncitizen appears in removal proceedings without the assistance of counsel, "it is critical that the [immigration judge] 'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.' " *Lacsina Pangilinan v. Holder*, 568 F.3d 708, 709 (9th Cir. 2009) (quoting *Agyeman v. INS*, 296 F.3d 871, 877 (9th Cir. 2002)). That is because noncitizens "appearing pro se often lack the legal knowledge to navigate their way successfully through the morass of immigration law, and because their failure to do so successfully might result in their expulsion from this country[.]" *Agyeman*, 296 F.3d at 877. "An [immigration judge] cannot correct his failure to probe more deeply by simply asking the alien whether he has anything to add in support of his claim." *Lacsina Pangilinan*, 568 F.3d at 709 (internal quotations and citations omitted).

In this case, Defendant appeared for his removal proceeding on November 3, 2010. Defendant's removal proceeding was conducted in a group, together with the removal proceedings of several other individuals. With the help from an interpreter, the immigration judge explained to the group that the purpose of the proceeding was to determine whether the individuals were removable from the United States. If the immigration judge found any of them removable, she would then consider all possibilities for relief. The immigration judge also informed the

group that they had the right to be represented by an attorney or qualified representative at no expense to the Government.

Defendant proceeded to represent himself at the removal hearing and asked the judge to consider voluntary departure. The immigration judge stated she would consider his request. Defendant admitted to the allegations contained in the NTA and, based upon his admissions, the immigration judge found Defendant removable from the United States to Mexico.

The immigration judge then asked Defendant whether he was afraid to be persecuted or tortured if he returned to Mexico, to which Defendant responded "No." The immigration judge asked about Defendant's immigration history and he explained that he first entered the United States in 2005. The immigration judge then conducted the following exchange:

IJ: Now, are your parents or grandparents United States citizens?

Defendant: No.

IJ: Are they lawful permanent residents?

Defendant: No.

IJ: And sir, are you legally married?

Defendant: Yes.

IJ: Do you have children?

Defendant: Yes.

…

IJ: Is your spouse a resident or citizen of the United States?

Defendant: No.

IJ: Ok. And your child? Resident or citizen of the United States?

Defendant: Resident. Well, he was born here.

The immigration judge then asked Defendant about having been recently arrested for Driving Under the Influence, to which Defendant informed the

**ORDER DISMISSING INDICTMENT ^ 9**

immigration judge that he pleaded guilty. The immigration also asked whether Defendant had been returned to the border by the officers, to which Defendant responded "yes."

Based on the above, the immigration judge denied Defendant's request for voluntary departure. "Sir, based upon a review of the facts in your case, I do not find that you are eligible for any forms of relief from removal. I have considered voluntary departure. Based upon your criminal and immigration history, I will deny the request as a matter of discretion. I hereby order your removal to Mexico on the charge contained in the Notice to Appear." Defendant stated he did not want to appeal the immigration judge's decision.

Defendant argues the immigration judge violated his due process rights because she failed to give Defendant a genuine opportunity to develop the issue of voluntary departure. *Arrieta*, 224 F.3d at 1079. Because the immigration deprived him of a meaningful opportunity to develop the issue, the immigration judge also failed to properly weigh both favorable and unfavorable equities. *See Campos-Granillo*, 12 F.3d at 852.

The Court finds the immigration judge failed to give Defendant a genuine opportunity to present evidence of the facts favoring voluntary departure. *Melendez-Castro*, 671 F.3d at 954. First, because Defendant represented himself at his removal proceeding, the immigration judge was required to "scrupulously and conscientiously probe into, inquire of, and explore all relevant facts." *Lacsina Pangilinan*, 568 F.3d at 709. The immigration judge failed to do that in this case. Although the immigration judge asked Defendant several questions during his removal proceeding, the nature of these questions provided Defendant little opportunity to present facts and evidence favorable to his application for voluntary departure.

**ORDER DISMISSING INDICTMENT ^ 10**

At the pretrial conference, the Government described the immigration judge's questions to Defendant as a direct examination. A direct examination, however, generally involves open-ended questions that give the witness an opportunity to provide a detailed answer in his or her own words. The Court finds the immigration judge's questions in this case were more akin to a cross examination, given that the questions primarily directed Defendant to provide a "yes" or "no" answer. For example, the immigration judge's question about Defendant's child allowed Defendant to confirm the child was a United States citizen. However, the nature of the question did not offer Defendant the opportunity to tell the immigration judge that his daughter was an infant; that he was active in caring and raising his daughter; and that he was the sole provider for his wife and infant daughter. It is unclear to this Court how an immigration judge can fulfill its obligation to "scrupulously and conscientiously probe into, inquire of, and explore all relevant facts," when a noncitizen is directed to answer "yes" or "no."

Second, the Court finds the immigration judge failed to properly weigh the favorable and unfavorable factors in her decision to deny Defendant's request for voluntary departure. *Campos-Granillo*, 12 F.3d at 852. The immigration judge denied voluntary departure because of Defendant's "criminal and immigration history." These conclusory statements are insufficient. *Id*. The immigration judge failed to properly evaluate both favorable and unfavorable factors, "assign[] weight or importance to each one separately and then to all of them cumulatively." *Id*.

For these reasons, the immigration judge violated Defendant's due process rights at his removal hearing.

### (c) Defendant Satisfies 8 U.S.C. § 1326(d).

As indicated above, a defendant can collaterally attack the validity of his removal order by demonstrating: (1) that he exhausted all administrative remedies

available to him to appeal his removal order; (2) that the underlying removal proceedings at which the order was issued improperly deprived him of the opportunity for judicial review, and (3) that the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d).

A noncitizen "is barred from collaterally attacking the validity of an underlying deportation order if he validly waived the right to appeal that order during the deportation proceedings." *U.S. v Reyes-Bonilla*, 671 F.3d 1036, 1043 (9th Cir. 2012) (citation omitted). To be valid, a waiver must be both "considered and intelligent." *Id*. The Government bears the burden of proving by clear and convincing evidence that the noncitizen's waiver of his right to appeal was valid. *Id*.

A waiver of appeal is not valid when the immigration judge violates a noncitizen's due process rights by depriving the noncitizen a genuine opportunity to seek voluntary departure. *See*, *e.g.*, *Melendez-Castro*, 671 F.3d at 954. An invalid waiver under these circumstances satisfies 8 U.S.C. § 1326(d)(1) and (2). *See id.*; *Reyes-Bonilla*, 671 F.3d at 1045; *Ubaldo-Figueroa*, 364 F.3d at 1049-1050.

In this case, Defendant explicitly waived his right to appeal the immigration judge's decision at the conclusion of his removal proceeding. However, as indicated above, the immigration judge violated Defendant's due process rights by depriving him of a genuine opportunity to apply for voluntary departure, and to present evidence of favorable equities in support of his request. Given the defect in Defendant's removal proceedings, his waiver cannot be considered valid. *Melendez-Castro*, 671 F.3d at 954. Accordingly, Defendant satisfies 8 U.S.C. § 1326(d)(1) and (2).

Additionally, Defendant can show that the entry of the 2010 removal order was fundamentally unfair. An underlying removal order is "fundamentally unfair"

**ORDER DISMISSING INDICTMENT ^ 12**

if: "(1) [a defendant's] due process rights were violated by defects in his underlying deportation proceedings, and (2) he suffered prejudice as a result of the defects." *U.S. v. Zarate-Martinez*, 133 F.3d 1194, 1197 (9th Cir. 1998), *overruled on other grounds as recognized in United States v. Ballesteros-Ruiz*, 319 F.3d 1101, 1105 (9th Cir. 2003).

To demonstrate prejudice, Defendant must show that he had a " 'plausible ground' for relief from deportation." *Melendez-Castro*, 671 F.3d at 955 (quoting *Ubaldo-Figueroa*, 364 F.3d at 1050). Defendant "does not have to show he actually would have been granted the relief." *Ubaldo-Figueroa*, 364 F.3d at 1050. Rather, he must demonstrate "some evidentiary basis on which relief could have been granted." *Reyes-Bonilla*, 671 F.3d at 1050.

First, as indicated above, Defendant has shown that the immigration judge violated his due process rights by depriving him of a genuine opportunity to apply for voluntary departure. *Melendez-Castro*, 671 F.3d at 954. The immigration judge robbed Defendant of the opportunity to present favorable equities that would have supported his request for voluntary departure. Moreover, in reaching her decision to deny Defendant's request for voluntary departure, the immigration judge failed to properly weigh both favorable and unfavorable equities. *Campos-Granillo*, 12 F.3d at 852.

Second, Defendant has shown "some evidentiary basis" to suggest he could have been granted voluntary departure. *Reyes-Bonilla*, 671 F.3d at 1050. There is no dispute Defendant was statutorily eligible for this relief. If given a genuine opportunity, Defendant would have told the immigration judge that his father died when he was ten years old, leaving his mother with the sole responsibility to support her four children. *See* Decl. of Cruz-Aguilar at ECF No. 43-6. Defendant would have told to the immigration judge that he dropped out of school in the sixth grade because he wanted to help support his family financially. *Id*. Defendant

**ORDER DISMISSING INDICTMENT ^ 13**

would have explained that he first came to this country in 2005 when he was 17 years old, looking for work so he could better support his family. *Id*. Defendant spent three years in California before moving to Washington. Defendant would have told the immigration judge that he got married in 2007 and had a daughter who is a United States citizen. *Id*. At the time of his removal proceeding, Defendant's daughter was an infant child. Defendant would have told the immigration judge that he was the sole provider for his wife and infant daughter, and was active in caring and raising his daughter. *Id*.

Given that these facts touch upon the factors favorable to granting voluntary departure, *U.S. v. Rojas-Pedroza*, 716 F.3d 1253, 1265 (9th Cir. 2013), it is plausible that, had this evidence been considered, the immigration judge could have granted Defendant voluntary departure. Therefore, Defendant also satisfies 8 U.S.C. § 1326(d)(3).

Because Defendant satisfies the requirements of 8 U.S.C. § 1326(d), Defendant's 2010 removal order cannot serve as the basis for the present unlawful reentry change. Accordingly, the indictment in this case can also be dismissed on this alternative ground.

## CONCLUSION

For the reasons provided above, the indictment in this case can be dismissed for two independent grounds.

//
//
//
//
//
//
//

**ORDER DISMISSING INDICTMENT ^ 14**

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendant's Motion to Dismiss Indictment, ECF No. 43, is **GRANTED**.
2. The indictment in the above-captioned matter is **DISMISSED**.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to file this Order, provide copies to counsel, and **close** the file.

**DATED** this 12th day of July 2019.



                          Stanley A. Bastian
                      United States District Judge